UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| DIANNE MARCOTTE,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>MICROS SYSTEMS, INC., a corporation; and DOES 1-50, inclusive,<br><br>　　　　　　Defendants.<br>_____/ | No. C 14-01372 LB<br><br>**ORDER RE DEFENDANT'S MOTION TO TRANSFER**<br><br>[Re: ECF No. 14] |

## INTRODUCTION

Plaintiff Dianne Marcotte sued her former employer, defendant Micros Systems, Inc., in state court for wrongful termination, and Micros removed the case to federal court. *See* Notice of Removal, ECF No. 1 at 1, Ex. A.[1] Citing a forum selection clause in the parties' employment contract, Micros moved to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), or in the alternative, to transfer the case to the District of Maryland. Motion to Dismiss or Transfer, ECF No. 14. For the reasons stated below, the court denies Micros's motion to dismiss and orders supplemental briefing limited to the issue of waiver of the forum selection clause.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document. All parties consented to the undersigned's jurisdiction. *See* Micros's Consent, ECF No. 8; Marcotte's Consent, ECF No. 9.

**STATEMENT**

## I. BACKGROUND

### A. The Parties and Their Locations

Micros is a publicly-traded company that sells "point of sale" terminals and systems for restaurants, hotels, and retail businesses. Complaint, Notice of Removal Ex. A, ECF No. 1, ¶ 5. It is a Maryland corporation with its principal place of business and headquarters in the State of Maryland. *See* Notice of Removal, ECF No. 1 at 1. The complaint alleges that Micros "maintains an office and/or conducts business in[] the county of San Francisco." Complaint, ¶ 2.

Ms. Marcotte was employed by Micros as a sales representative from about July 2000 to May 31, 2012. *See id.* ¶¶ 5, 9. At all relevant times, she was over 40 years old and resided in Contra Costa County, California. *Id.* ¶¶ 1, 18. When she worked for Micros, she lived in Danville, San Ramon, and Brentwood, and she worked from Micros offices in Alameda and the Bay Area and from her homes. Marcotte Decl., ECF No. 16, ¶ 3. She never worked in any Micros offices outside California, and during her 12 years with the company, she visited its head offices (apparently in Maryland) only for her initial training and "a few national meetings, for very brief periods." *Id.*

### B. Ms. Marcotte's Performance at Micros

Ms. Marcotte "accrued a solid performance record" at Micros, which she alleges is shown by her sales figures, her account development, other performance metrics, and her "consistently good performance evaluations and assessments by her managers." Complaint ¶¶ 6-7. Ms. Marcotte's managers assured her that based on her performance, "she could count on having a secure position and continued employment at MICROS as long as she continued to provide satisfactory performance and ongoing commitment to her job duties." *Id.* ¶ 7. She alleges that these assurances constituted an implied-in-fact contract not to terminate her without cause. *See id.* ¶ 34.

### C. Ms. Marcotte's Contracts with Micros

Each year during her tenure at Micros, Ms. Marcotte signed a "Compensation Plan" (hereafter, "Plan Agreement"). Tow Decl., ECF No. 14-2, ¶ 3. Each Plan Agreement contained a forum selection clause.

The Plan Agreements that Ms. Marcotte signed in 2000 and 2001 contained choice of law and

forum selection provisions that stated:

> This Agreement shall be construed in accordance with and be governed by the laws of the State of Maryland, United States, excepting the conflict of law rules of the State of Maryland, as if this contract were made and to be performed entirely within the State of Maryland.  Final and binding arbitration shall be the [employee's] sole and exclusive remedy for any claim that MICROS breached this Agreement....  All arbitration proceedings shall be held in Columbia, Maryland....

*Id.* ¶ 6 (alteration and omissions in original).

Since 2002, the Plan Agreements contained a forum selection clause that contains "language identical to, or substantially identical to" the forum selection clause in the 2012 Plan Agreement. *Id.* ¶ 4. The 2012 Plan Agreement is comprised of two documents: (1) the Sales Compensation Plan, and (2) the Terms and Conditions. *See* Sales Compensation Plan, Tow Decl. Ex. B (incorporating by reference the Terms and Conditions); Terms and Conditions, Tow Decl. Ex. A.  Paragraph 1 describes this two-document combination and the Agreement's expiration at the end of the applicable fiscal year:

> 1. <u>General</u>.  The Compensation Plan (the "Plan") consists of these Plan Terms and Conditions and the Employee's individual plan document.  Together, these documents describe the compensation that the Employee is eligible to earn.  MICROS reserves the right to modify the Plan from time to time, including without limitation, changing salary, bonus (if applicable), commission, or the total compensation cap (if applicable).  Notwithstanding anything to the contrary herein, this Plan shall expire at the end of the applicable fiscal year and does not automatically renew.

Tow Decl. Ex. A, ECF No. 14-2 at 5. The forum selection clause language is in paragraph 8, which also has a choice-of-law provision and a jury trial waiver:

> 8. <u>Legal Matters</u>.  This Plan shall be construed in accordance with and be governed by the laws of the State of Maryland, United States, excepting the conflict of law rules of the State of Maryland, as if this contract were made and to be performed entirely within the State of Maryland.  The parties consent to the exclusive jurisdiction and venue of the federal courts sitting in the state of Maryland for all claims or actions arising under or relating in any way to the Plan or the relationship between the parties, whether sounding in contract, tort, or otherwise, and regardless of whether persons or entities who are not party to this Plan are parties to such action; provided, however, that for any claims or actions for which the federal courts sitting in the state of Maryland would not have subject matter jurisdiction, the parties shall bring such claims or actions in the state courts of the State of Maryland, and consent to the exclusive jurisdiction and venue of the state courts of Maryland for all such claims or actions whether sounding in contract, tort, or otherwise, and regardless of whether persons or entities who are not party to this Plan are parties to such action. MICROS AND THE EMPLOYEE EACH UNCONDITIONALLY AND IRREVOCABLY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS PLAN, ANY DEALINGS BETWEEN THE PARTIES RELATING

TO THE SUBJECT MATTER OF THIS PLAN, AND/OR THE RELATIONSHIP BETWEEN THE PARTIES, WHICH WAIVER IS INTENDED TO INCLUDE, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, AND ALL OTHER COMMON LAW OR STATUTORY CLAIMS. Each party shall be solely responsible for its own costs, expenses and attorneys' fees.

*Id.* ¶ 7, Ex. A. The 2012 Plan Agreement is for fiscal year 2012 and has an effective date of July 1, 2011. *See id.* Ms. Marcotte signed it on August 11, 2011. *Id.*

Micros also required Ms. Marcotte to "acknowledge and be subject to" a non-compete agreement. Complaint ¶ 45. In pertinent part, the non-compete provision is as follows:

> 9. <u>Covenants.</u>. The following prohibitions apply for a period of one (1) year following the termination of the Employee's employment with MICROS for any reason (other than job elimination by MICROS).
>
> . . .
>
> b) <u>Competing Products & Services.</u> The Employee shall not, whether as an individual or as a proprietor, stockholder, partner, officer, director, employer, employee, agent or otherwise, engage in any business that offers services or products that are similar to or competitive with services performed or products sold by MICROS on the date of the termination of the Employee's employment with MICROS; this prohibition applies only within a 200-mile radius of the site where the Employee's employment with MICROS was principally located on the date of the termination of employment (or the principal location of employment during the twelve (12) months period preceding the date of termination if different).

Tow Decl. Ex. A, ECF No. 14-2 at 7.

**D. Ms. Marcotte's Dispute with Micros**

Beginning in mid-to-late 2011, Micros, through Ms. Marcotte's managers, reduced and removed her sales accounts and territories, excluded her from important events and business opportunities, and denied and reduced her commissions on business she generated. Complaint ¶ 8. Ms. Marcotte alleges that her age and gender were the principal motivating factors for Micros's conduct. *Id.* ¶¶ 13, 19. The pattern of adverse employment actions continued after Ms. Marcotte objected to her treatment "and to other actions by defendant MICROS with respect to its customers, that plaintiff believed were unfair and/or misleading." *Id.*

In August 2011, Jeff Pinc, Ms. Marcotte's direct manager, gave her the 2012 Plan Agreement. *See* Marcotte Decl. ¶ 4; Complaint ¶ 24; *see also* 2012 Plan Agreement, Tow Decl. Ex. B, ECF No. 14-2 at 9. According to Ms. Marcotte, Mr. Pinc told her that (1) the Plan Agreement already was overdue, (2) she had to sign and return it right away, and (3) "it didn't matter whether [she] read it or

C 14-01372 LB
ORDER 4

had a lawyer review it, because there wasn't time and [Ms. Marcotte] couldn't change any of the terms in it anyway, but had to accept them all as a company requirement to keep [her] job." Marcotte Decl. ¶ 4. Ms. Marcotte says that she "had been told that by prior managers as well," and those prior managers also told her that "the entire Sales Plan expired at the end of each fiscal year (except for the covenants that specifically stated they continued for an additional period after termination of [her] employment)." *Id.*

In May 2012, Mr. Pinc told Ms. Marcotte that Micros was planning to terminate her employment "for alleged performance reasons" that she believed, and told him, had no merit. *Id.* She asked questions about the termination decision and her ability to find a new job after she was terminated. *Id.* She told Mr. Pinc that she was concerned about the non-compete clause in the 2012 Plan Agreement. *See id.* Micros terminated Ms. Marcotte's employment on or about May 31, 2012. *Id.* ¶ 9.

According to Ms. Marcotte, NCR, one of Micros's competitors in the point-of-sale industry, said that it was willing to hire her in a similar position in the Bay Area at a compensation level similar to her compensation level at Micros before she was terminated. *Id.* ¶ 5; Complaint, ¶ 44. NCR expressed its desire to hire Ms. Marcotte as a sales representative and told her that its compensation was relatively comparable to what Ms. Marcotte received at Micros. Marcotte Decl. ¶ 5; Complaint, ¶ 44.

Thereafter, in June 2012, Ms. Marcotte spoke several times by telephone with Ted Giannopoulos, Micros's then-CEO. Marcotte Decl. ¶ 5. She told Mr. Giannopoulos about the prospective job at NCR. *Id.* ¶ 5; Complaint, ¶¶ 45-46. She asked Mr. Giannopoulos to waive the non-compete provision or confirm that Micros would deem it ineffective and not enforce it against her. *Id.* ¶ 46; Marcotte Decl. ¶ 5. She told him that she needed Micros to waive that provision because she was unemployed at age 54 and needed the NCR opportunity so that she could pay her bills and support herself and her children. Marcotte Decl. ¶ 5. She also told him that she thought that paragraph 8 of the 2012 Plan Agreement Terms and Conditions was "intimidating to me and potential employers because it said any legal action involving the non-compete clause would be brought in Maryland, which seemed unfair and to have no valid purpose." *Id.*

According to Ms. Marcotte, Mr. Giannopoulos told her he thought the terms were neither fair nor necessary. *Id.* ¶ 6. He told her that she "didn't need to worry about the clause requiring lawsuits to be in Maryland, and that clause would be waived." *Id.* Ms. Marcotte thanked him and said that her larger concern was the non-compete clause and her "request for severance compensation in light of [her] twelve years of service there." *Id.* He responded that "that was more complicated and that he would need to look further into waiving it and discuss it with company lawyers and get back to" Ms. Marcotte. *Id.*

On June 21, 2012, Ms. Marcotte sent Mr. Giannopoulos an e-mail stating that she appreciated "the considerations you might possibly make since our last call. That would include eliminating the non-compete clause in my contract and potentially offering a severance package." *Id.* Ex. 1, ECF No. 16 at 6. On June 22, 2012, Mr. Giannopoulos replied to Ms. Marcotte's e-mail message. *See id.* He said that Micros would not offer her severance compensation because Ms. Marcotte turned down a position in Micros's San Francisco office. *Id.* He said that "[w]ith respect to the non-compete, we will not enforce that provision except with our two main competitors: NCR/Aloha and Agilysys/Infogenesis. Other than those two, please feel free to pursue any other opportunities." *Id.*; *see* Complaint ¶ 46.

Ms. Marcotte alleges that the non-compete provision was unlawful and unenforceable under California law, and Mr. Giannopoulos knew or should have known this. Complaint ¶ 45. Mr. Giannopoulos knew from his prior conversation with Ms. Marcotte that she needed a waiver of the non-compete clause in order to get a job with NCR. Marcotte Decl. ¶ 7. Micros and its two main competitors made up a substantial majority of the total U.S. market share in the "point of sale" industry. *Id.* The only jobs that remained available were with much smaller companies that had limited sales opportunities and lower salaries. *Id.* Thus, Micros's refusal to waive the non-compete clause caused Ms. Marcotte to remain unemployed for about four months. *Id.* ¶ 8. The job she was eventually forced to accept offered a salary that was close to 50% less than what she made at Micros or would have made at NCR. *Id.*; *see* Opposition, ECF No. 15 at 5 (Ms. Marcotte made approximately $130,000 per year in her last year at Micros).

## II. PROCEDURAL HISTORY

Ms. Marcotte filed her complaint in San Francisco County Superior Court on February 26, 2014. *See id.* She asserts the following claims: (1) - (2) employment discrimination based on gender and age, (3) retaliation, (4) failure to prevent discrimination and/or retaliation, (5) breach of implied contract, (6) wrongful termination in violation of public policy, and (7) intentional interference with prospective economic advantage. *Id.* ¶¶ 10-47. She seeks general and compensatory damages of not less than $1,500,000, punitive damages, interest, fees, and costs. *Id.* at 18.

Micros answered the Complaint on March 24, 2014, *see* Answer, Notice of Removal Ex. B, ECF No. 1 at 21-25, and removed the action to this court the next day, *see* Notice of Removal ECF No. 1 at 1. On July 23, 2014, Micros filed the pending motion to dismiss or transfer venue. *See* Motion, ECF No. 14. Ms. Marcotte filed an opposition brief on August 6, 2014. Opposition, ECF No. 16. Micros filed its reply on August 13, 2014. Reply, ECF No. 19. The court held a hearing on September 4, 2014. *See* Minute Order, ECF No. 24.

## ANALYSIS

Micros moves to dismiss the case under 28 U.S.C. § 1406(a) for improper venue and alternatively moves to transfer the case under 28 U.S.C. § 1404(a) on the ground that the forum selection clause requires that the case be litigated in the District of Maryland. The court denies the motion to dismiss and orders supplemental briefing on the issue of whether Micros waived enforcement of the forum selection clause.

## I. MOTION TO DISMISS FOR IMPROPER VENUE UNDER 28 U.S.C. § 1406(a)

The parties do not dispute that venue lies in this district because the events giving rise to the lawsuit took place here. *See* 28 U.S.C. § 1391(b)(2). The issue is whether the forum selection clause changes this outcome. It does not. The Supreme Court recently explained,

> When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b). As a result, a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3).

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Tex.*, 134 S. Ct. 568, 577

(2013).

Accordingly, the court denies Micros's motion to dismiss.[2]

## II. MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)

Micros cites only the forum selection clause as a ground to transfer the case to the District of Maryland. *See* Motion, ECF No. 14. Indeed, absent the forum selection clause, the "'individualized, case-by-case consideration of convenience [of parties and witnesses] and fairness'" militate against transferring the case. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)); *see* 28 U.S.C. § 1404(a). While the case might have been brought in the District of Maryland, the remaining factors all favor litigating the case here: Ms. Marcotte's employment here, the execution of the contracts here, the parties' respective contacts with the forum, access to witnesses and evidence, the convenience of the parties and witnesses, administrative efficiencies, and Ms. Marcotte's choice of forum. *See* 28 U.S.C. § 1404(a)); *see also Jones*, 211 F.3d at 498-99 (addressing some of these factors).

---

[2] The venue analysis might be altered by the choice of law provision in the Plan Agreement, which is in the same paragraph as the forum selection clause and states in relevant part: "This Plan shall be construed in accordance with and be governed by the laws of the State of Maryland, United States, excepting the conflict of law rules of the State of Maryland, as if this contract were made and to be performed entirely within the State of Maryland." Tow Decl. Ex. A, ¶ 8; *see supra* Statement (setting forth full paragraph with choice of law and forum selection clauses). Ordinarily, in a diversity case such as this, federal standards govern whether transfer is appropriate. *See Atlantic Marine*, 134 S. Ct. at 579. But if the contract contains a choice of law provision, the forum selection clause generally is evaluated by reference to the law of the jurisdiction whose law governs the rest of the contract. *See* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 4.65 (The Rutter Group 2014) (citing and quoting *Abbott Laboratories v. Takeda Pharmaceutical Co. Ltd.*, 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the validity and meaning of a forum selection clause . . . by reference to the law of the jurisdiction whose law governs the rest of the contract. . . .") and *Phillips v. Audio Active Ltd.*, 594 F.3d 378, 386 (2nd Cir. 2007)). The parties do not discuss how Maryland law affects the court's evaluation of the validity and meaning of the forum selection clause in the context of the venue analysis and instead cite and apply federal and California cases. *See, e.g.*, Motion, ECF No. 14 at 5 (analyzing and applying *Atlantic Marine*). Given that approach, and the parties' agreement that the legal framework would not differ materially if Maryland law applied, the court considers the issue under the transfer statute, 28 U.S.C. § 1404(a), and the federal legal standard set forth in *Atlantic Marine.*

A valid forum selection clause trumps this outcome. Courts ordinarily transfer venue to the contractually-designated forum unless the plaintiff shows "extraordinary circumstances unrelated to the convenience of the parties" to overcome the "controlling weight" given to the forum selection clause. *See Atlantic Marine*, 134 S. Ct. at 580. Put another way, "[a] proper application of § 1404(a) requires that a forum selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 579 (quotation and citation omitted). This changes the ordinary transfer analysis under section 1404(a) in several ways.

First, a plaintiff's choice of forum no longer is given any weight: "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 581.

Second, the parties' private interests (such as the availability of compulsory process for witnesses) no longer factor into the court's inquiry about whether transfer is appropriate. *See id.* at 582. That is because by selecting the forum, the parties waive their right to challenge the forum as inconvenient based on private interests. *See id.* The court thus "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.*

Third, the court can still consider "public interest" factors – such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the [governing] law" – as a limit on the appropriateness of transfer. *Id.* n.6 (quoting *Piper Aircraft*, 454 U.S. at 241 n. 6) (alteration in original). But those interests will "rarely defeat" the transfer motion because "in all but the most unusual cases, 'the interest of justice' will be served by holding parties to their bargain." *Id.* at 582-83.

Assuming a valid forum selection clause, transfer is appropriate under the *Atlantic Marine* factors. Any private interests are trumped by the parties' agreement in their contract to a different forum, and the case is not so unusual that it overrides the interest in holding parties to their bargain.

*See id.*[3]

Ms. Marcotte argues, however, that the clause is not valid and enforceable because (A) it is unreasonable, (B) it expired, and (C) Micros waived enforcement of the clause.

**A. Whether the Forum Selection Clause Is Unreasonable**

Forum selection clauses like the one at issue here are presumed valid, and courts enforce them "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).[4] A forum selection clause is unreasonable if (1) it was incorporated into the contract as a result of fraud, undue influence, or overweening bargaining power, (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court, or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Richards v. Lloyd's of London,* 135 F.3d 1289, 1294 (9th Cir. 1998) (en banc). "The party seeking to avoid the forum selection clause bears 'a heavy burden of proof.'" *Id.* at 1294 (quoting *Bremen* 407 U.S. at 17).

Ms. Marcotte first notes that she had no ability to negotiate the inclusion of the clause in the Plan Agreement. *See* Opposition, ECF No. 15 at 9-10. Admittedly contract terms imposed as a condition of employment impose economic pressure on an employee, and few employees are in a position to

---

[3] Ms. Marcotte argues that the local interest calculus in having a diversity case tried in a forum that is at home with the governing law is in flux and soon will favor a California forum. *See* Opposition at 25-26. That is because Oracle, a California corporation, is in the process of acquiring Micros in a deal "that is expected to close in the second half of 2014." *See* Welch Decl. Ex. 2, ECF No. 17 at 7 (letter from Micros's current President and CEO announcing the acquisition). Ms. Marcotte argues that "[w]hen that occurs Oracle will then become the real party in interest / successor in interest in place of MICROS as a defendant in this case." Opposition at 25. This does not change the outcome. First, at least as of the time of the briefing, it was a pending acquisition. Second, there is no evidence that this changes Micros's corporate structure or moves it to California. Third, there is nothing that suggests the acquisition renders this an unusual case that warrants an exception to the ordinary rule requiring transfer.

[4] Although *Bremen* addressed an international forum selection clause in an admiralty case, its "'reasoning applies with much force to federal courts sitting in diversity.'" *Atlantic Marine*, 134 S. Ct. at 582 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 482 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

**UNITED STATES DISTRICT COURT**
For the Northern District of California

refuse a job with a forum selection requirement. *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1143-44 (2013) (making this argument about pre-employment arbitration contracts). That being said, the Ninth Circuit has rejected the argument that unequal bargaining power is a ground to reject enforcement of a forum selection clause in an employment contract. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004). The reason is that the employee has "the opportunity to seek work with other employers if he oppose[s] the forum selection clause." *Id.* A related principle is that a forum clause is not unreasonable merely because of the parties' unequal bargaining power: it is enforceable if there is reasonable communication of the clause. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S 585, 595 (1991) (applying this approach to adhesion contracts). Recognizing this, Ms. Marcotte concedes that "this factor is not determinative." Opposition at 7.

Ms. Marcotte also argues that the jury trial waiver in paragraph 8 invalidates the entire paragraph, including the forum selection clause. *Id.* at 11; *see supra* Statement (setting forth paragraph 8). In support of that conclusion, she cites *Grafton Partners L.P. v. The Superior Court of Alameda County*, 36 Cal. 4th 944 (2005), where the California Supreme Court invalidated a pre-dispute contract agreement that any disputes would be resolved in a court trial. Micros counters that it has not tried to enforce the jury trial waiver clause and that in any event, any unconscionable provision can be severed under California Civil Code § 1670.5. Reply, ECF No. 19 at 9-10. It also points out that a district court in Maryland can as easily resolve any choice of law issues and the issue of whether the jury waiver is enforceable (which it is under Maryland and federal law).[5] *Id.* at 10. The court concludes that the jury waiver does not require invalidation of the forum selection clause merely because they are in the same paragraph.

Ms. Marcotte next argues that the forum selection clause is an attempt to evade a strong policy of

---

[5] The parties dispute the reach of the Plan Agreement's choice-of-law clause, which provides that Maryland state law applies to the construing of the Plan Agreement. *See supra* Statement and note 3 (summarizing the provision). Ms. Marcotte argues that it governs only the interpretation of the Plan Agreement and does not prohibit the application of California law to her Fair Employment and Housing Act ("FEHA") and California Business and Professions Code claims. Opposition at 26. Micros argues that Maryland law will apply to the claims for breach of implied contract and intentional interference with prospective economic advantage (based on enforcement of the non-compete provision) because they arise under the Plan Agreement. Reply at 15.

the forum here: California law that holds that covenants not to compete are unenforceable as contrary to public policy. Opposition at 15-23. This, of course, is likely one reason for the choice of law provision: in contrast to California, "the federal or state courts in Maryland would permit and enforce the non-compete agreements in the Sales Plan." *Id.* at 21.

The problem with this argument is that the choice of law issues are the same for a district court in Maryland or California: both courts, sitting in diversity, consider which law (California or Maryland) to apply to the claims. *See Google, Inc. v. Microsoft Corp.*, 415 F. Supp. 2d 1018, 1022 (N.D. Cal. 2005). "A forum selection clause determines where the case will be heard; it is separate and distinct from choice of law provisions that are not before the court." *Besag v. Custom Decorators, Inc.,* No. C 08-05463 JSW, 2009 WL 330934, at *3-4 (N.D. Cal. Feb. 10, 2009) (called into question on other grounds by *Narayan v. EGL, Inc.*, 616 F.3d 895, 899, 904 (9th Cir. 2010)). "Thus, a party challenging enforcement of a forum selection clause may not base its challenge on choice of law analysis." *Id.* at *4 (enforcing a forum selection clause in an employment agreement and characterizing as speculative the employee's argument that Oregon court would apply Oregon substantive law in a manner that would foreclose certain remedies). In sum, enforcing the forum selection clause is different than choice-of-law issues.

Ms. Marcotte does not establish that having her case heard in Maryland contravenes a strong public policy of California. She cites *Doe1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) (per curiam). There, the Ninth Circuit held that AOL's subscription agreement, which required subscribers to file lawsuits in Virginia state court, violated public policy when it was applied to California residents who brought a class-action lawsuit under California consumer protection laws. 552 F.3d at 1079-80, 1083-84. Virginia law did not allow consumer lawsuits to be tried as class actions, and this violated California's strong public policy, which favors consumer class actions and disfavors the waiver of statutory consumer remedies. *Id.* at 1083-84 & n.12. By contrast, this case does not involve foreclosure of a remedy like a class action lawsuit.

Moreover, unlike the plaintiffs in *Doe1*, who would have been denied their day in court, the District of Maryland can address Ms. Marcotte's claims, whether they arise under Maryland or California law. *See Meras Eng'g, Inc. v. CH20, Inc.*, No. C-11-0389 EMC, 2013 WL 146341, at

\*12 (N.D. Cal. Jan. 14, 2013) (distinguishing *Doe1* on this basis and collecting cases doing the same). Enforcing the venue clause, and locating the forum in Maryland, do not require the application of Maryland law to the claims. *See id.* (making a similar argument).

While a federal court sitting in diversity ordinarily applies the choice-of-law rules of the forum, *see Narayan*, 616 F.3d at 898, the Plan Agreement's choice of law provision excepts Maryland's conflict of law rules. *See supra* Statement & n.2. The briefs did not address the import of this. The court asked Micros's counsel exactly what this meant. For example, did it mean that the Maryland court would apply no choice of law provision and had to apply Maryland law, period end of story? This matters because (as the parties agree) California public policy disfavors non-compete agreements. *See* Cal. Business & Professions Code § 16600 ("every contract by which anyone is restrained from engaging in a lawful profession, trade or business of any kind is to that extent void"). California also "has a strong interest in protecting its employees from noncompetition under section 16600." *Advanced Bionics v. Medtronic, Inc.*, 29 Cal. 4th 697, 706-07 (2002). By contrast, Maryland law and courts apparently allow and enforce covenants not to compete. *See* Opposition, ECF No. 15 at 18, 19-20 (citing, *e.g.*, *TEKSYSTEMS, Inc. v. Bolton*, No. C RDB-08-3099, 2010 WL 447782 (D. Md. Feb. 4, 2010).

At the hearing, Micros's counsel said that – regardless of the exception in paragraph 8 – the Maryland forum court would apply its own conflicts laws, which counsel characterized as similar to California's laws. It pointed to the standard set forth in *National Glass, Inc. v. J.C. Penney Properties, Inc.*, 336 Md. 606 (Md. 1994). That case cited to and applied the Restatement (Second) of Conflicts of Laws in evaluating whether it should apply Pennsylvania law despite the parties' contractual agreement to apply Maryland law to their disputes. *Id.* at 611. California also applies the Restatement (Second) of Conflict of Laws to determine whether choice-of-law provisions are valid. *See Google, Inc. v. Microsoft Corp.*, 415 F. Supp. 2d 1018, 1020 (N.D. Cal. 2005). Micros also pointed out that a district court here and in Maryland would conduct the same analysis about what law to apply.

Given this context, and as in *Meras*, the court concludes that Ms. Marcotte has not carried the "heavy burden" of establishing that the forum selection clause is unenforceable. *See id.* at \*14-15;

*accord Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101, 1104 (S.D. Cal. 2006) (rejecting plaintiff's challenge to a forum selection clause on the basis that transfer would arguably lead to the application of Washington substantive law in violation of California's public policy against noncompete covenants in employment agreements).[6]

**B. Whether the Forum Selection Clause Expired**

Ms. Marcotte next argues that there is no "contractually valid forum-selection clause," *see Atlantic Marine*, 134 S. Ct. at 581 n.5, because the forum selection clause expired with the Plan Agreement. To support this argument, she cites the first paragraph of the Terms and Conditions, which states that "[n]otwithstanding anything to the contrary herein, this Plan shall expire at the end of the applicable fiscal year and does not automatically renew." *See supra* Statement (setting forth full paragraph); Tow Decl. Ex. A, ECF No. 14-2 at 5. Ms. Marcotte concludes that "the forum-selection clause, along with all other terms of the Plan, automatically terminated and were no longer in effect as of June 30, 2012, the end of the 2011 fiscal year." Opposition, ECF No. 15 at 11. To support that conclusion, Ms. Marcotte cites cases that recite standard contract construction rules, including the rules that the plain language of contracts governs and ambiguities are construed against the drafter. *See id.*

Dispute resolution provisions presumptively survive termination of a contract. *See Saleemi and Sob, LLC v. Gosh Enterps., Inc.*, 467 Fed. App'x 744, 744 (9th Cir. Feb. 3, 2012) (Mem. Op.) (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991); and 13 *Corbin on Contracts* § 67.2 (rev. ed. 2003 & Supp. 2011)). Although the presumption is rebuttable, *see id.*, federal courts hold

---

[6] At the hearing, the undersigned asked Micros if it conceded that applying Maryland law would be contrary to California public policy. *See Meras*, 2013 WL 146341, at *12 (Meras conceded the same about Washington law regarding convenants not to compete); *see also Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 902 (1988) (invalidating choice of law provision mandating application of Maryland law to employment contracts with covenants not to compete). Micros's counsel said that it would not, in part because Micros did not apply a blanket covenant not to compete and instead enforced the provision only as to its two main competitors. *See supra* Statement. Counsel referred to the fact that under Maryland law, the court would evaluate the "reasonableness" of the covenant not to compete and argued that the application of the covenant here was reasonable. Counsel again noted that the analysis of what law to apply is different than the issue of whether the forum selection clause is valid.

that forum selection clauses survive, even where other provisions do not. For example, in *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, the court held that the forum selection clause applied to a dispute even after a party terminated the underlying agreement. 752 F. Supp. 2d 517, 534-36 (E.D. Pa. 2010) (granting motion to transfer venue), *order amended on reconsideration,* No. CIV.A. 10-1054, 2011 WL 204738 (E.D. Pa. Jan. 21, 2011) (reversing decision to transfer based on convenience factors). In *TriState*, the "agreement expressly provide[d] for the survival of certain other contractual provisions, but not the forum-selection clause." *Id.* The plaintiff argued that because the savings clause failed to mention the forum selection clause, it no longer applied. The court disagreed, finding that the savings clause "simply does not evidence a clear intent that, upon termination of the agreement, the forum-selection clause would cease to apply to claims arising under the agreement." *Id.*

Similarly, in *Advent Electronics, Inc. v. Samsung Semiconductor, Inc.*, the court granted a motion to transfer venue pursuant to the forum selection clause even though the dispute arose after one party terminated the underlying agreement. 709 F. Supp. 843, 846 (N.D. Ill. 1989). The court reasoned that because "[t]ermination of a contract does not divest parties of rights and duties already accrued," a forum selection clause survives termination of the contract absent contractual language to the contrary. *Id.*; *see also AGR Fin., L.L.C. v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 401 (S.D.N.Y. 2000) (concluding, based on the connection of plaintiff's claims to the underlying contract, that "even if the Agreement was terminated, its forum selection clause would still be effective").

The Plan Agreement for fiscal year 2012 was effective July 1, 2011, presumably expired on June 30, 2012, and was in effect as of May 31, 2012, when Ms. Marcotte's employment terminated. Nothing supports the conclusion that the forum selection clause thereafter expired at the end of the contract's term. To the contrary, the case law supports the conclusion that dispute resolution provisions survive the termination of a contract.

**C. Whether Micros's CEO Waived Enforcement of the Forum Selection Clause**

The final issue is whether Micros's then-CEO Ted Giannopoulos waived enforcement of the forum selection clause during the calls when he allegedly told Ms. Marcotte that Micros would not

enforce it. *See* Marcotte Decl., ECF No. 16, ¶ 6 ("[Mr. Giannopoulos] told me that I didn't need to worry about the clause requiring lawsuits to be in Maryland, and that clause would be waived."). Ms. Marcotte argues that this constitutes a waiver[7] and points to paragraph 1 of the Plan Agreement, which provides the following: "MICROS reserves the right to modify the Plan from time to time, including without limitation, changing salary, bonus (if applicable), commission, or the total compensation cap (if applicable)." *See* Tow Decl. Ex. A, ECF No. 14-2 at 5. Micros does not argue that there cannot be waiver and instead argues only that Ms. Marcotte does not show waiver here.

To establish waiver under California law[8], Ms. Marcotte must establish by clear and convincing evidence that Micros freely and knowingly gave up its right to have the forum clause enforced. *See* Judicial Council of California Civil Jury Instruction (CACI) 33. Waiver of a contractual right is a question of fact. *See Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 736 (9th Cir. 1988). And just as venue can be waived, so too can reliance on a forum selection clause. The issue is whether the facts here establish waiver and how *Atlantic Marine* affects the analysis.

Micros first argues that Ms. Marcotte's uncorroborated declaration is "transparently dubious" and does not establish waiver. Reply, ECF No. 19 at 9. It points to the absence of any mention of the forum selection clause in the emails that followed the supposed conversation. *Id.* at 8. Those emails, which are summarized in the Statement, ask only about the non-compete clause and possible severance payments. The absence of written corroboration does not necessarily defeat Ms. Marcotte's narrative: she allegedly brought up three issues in her conversation (forum, non-compete clause, and severance), Mr. Giannopoulos addressed one (forum), and she thanked him and said that her main concern was the non-compete clause and severance compensation. She thereafter followed up with him on the unresolved issues. That narrative is not inconsistent or so "transparently dubious" to fail on its face. Moreover, Micros did not submit evidence to rebut Ms. Marcotte's

---

[7] In her papers, Ms. Marcotte also argues that Mr. Giannopoulos's statements constituted an oral modification to the contract. *See* Opp'n, ECF No. 15 at 14. At oral argument, Ms. Marcotte's counsel said she was arguing waiver.

[8] At the hearing, the parties agreed that the court should apply California contract law to determine whether there was a waiver.

assertions about Mr. Giannopoulos's promises to her. Presumably he had the authority as CEO to waive enforcement of the forum selection clause, and Ms. Marcotte's account of their conversation and the emails provide context to suggest that he did have that authority. That being said, neither party provided any case law with examples of facts that courts have found sufficient to establish waiver by clear and convincing evidence. To the extent that Micros argued at the hearing that a self-serving declaration is not clear and convincing evidence, its argument was conclusory and did not cite case law to support that conclusion. As Plaintiff's counsel pointed out, many declarations are by definition self-serving.

Moreover, to the extent that the answer turns on an assessment of Ms. Marcotte's credibility, the parties did not address how the court should decide the issue (except to argue that the court should decide it as a matter of law) or cite cases about whether her declaration alone can establish waiver by clear and convincing evidence. Plaintiffs urge the court to follow *Murphy v. Schneider Nat'l, Inc.*, in which the Ninth Circuit held that "in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences . . . and resolve all factual conflicts in favor of the non-moving party." 362 F.3d 1133, 1138 (9th Cir. 2003). *Murphy* is not obviously applicable because it addresses a Rule 12(b)(3) motion to dismiss, not a motion to transfer under § 1404(a).

In support of its argument that Ms. Marcotte did not establish waiver by clear and convincing evidence, Micros also argued at the hearing that its assertion of the forum selection clause since the inception of the litigation casts doubt on Ms. Marcotte's narrative. *See* Answer, ECF No. 1 at 23. That would be a better argument if it were part of a fact narrative contesting that Micros never waived the forum selection clause. Moreover, to the extent that its actions constitute a retraction of any waiver, the parties did not address the issue in their briefs or at the hearing (including the related issue of whether Ms. Marcotte materially relied on the waiver).

Micros's second argument is that the waiver needed to be in writing because it was not based on consideration. In its brief, it cited only California Civil Code § 1541, which provides that "an obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration." That citation does not obviously

answer the question here, particularly given that forum selection clauses (like venue) can be waived even without consideration. Even if it did, the parties did not brief whether an employer's offer of an accommodation to an employee as part of the termination process can be a bargained-for benefit, and whether the facts here establish that.

At the hearing, Micros also cited the California statute of frauds in support of its argument that the waiver must be in writing. Counsel for Ms. Marcotte countered that CACI 336 embodies California law that a waiver may be oral or in writing and that in any event, the statute of frauds applies only if the waiver agreement by its terms cannot be performed within one year. *See* California Civil Code § 1624. Again, this argument was raised for the first time at the hearing.

Another issue is how the *Atlantic Marine* standard affects the inquiry here. The parties did not address the issue in their briefs and at the hearing, they argued only their conclusions that it did or did not apply without grounding their conclusions in any analysis. If *Atlantic Marine* applies to the waiver issue, then Ms. Marcotte bears the "heavy burden" of establishing that the court should not enforce the forum selection clause, and the court must disregard the "private interest" factors in Ms. Marcotte's opposition (which could include the waiver issue). *See Atlantic Marine*, 134 S. Ct at 580. On the other hand, *Atlantic Marine* presupposed the existence of a valid forum selection clause and Ms. Marcotte's waiver argument is a challenge to the clause's validity. *See id.* at 581 n.5. If *Atlantic Marine* does not apply, the strong preference for transfer would no longer apply. And as discussed above, the parties do not illuminate the burdens of proof and persuasion on the waiver issue. Counsel did a good job addressing these issues on the fly at oral argument, but under the circumstances, supplemental briefing is appropriate regarding the issues raised in this section.

## CONCLUSION

For the foregoing reasons, the court **DENIES** Defendant's motion to dismiss and orders the supplemental briefing on the following schedule: Micros's opening brief of no more than 6 pages due on September 18; Plaintiff's opposition brief of no more than 6 pages due on September 25; and Micros's supplemental reply brief of no more than 3 pages due on October 2.

**IT IS SO ORDERED.**

Dated: September 11, 2014



LAUREL BEELER
United States Magistrate Judge